Penn Ayers Butler (Bar No. 56663)
Michael D. Cooper (Bar No. 42761)
Elizabeth Berke-Dreyfuss (Bar No. 114651)
Tracy Green (Bar No. 114876)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: tgreen@wendel.com

Attorneys for Debtor
ECO2 Plastics, Inc.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In Re

ECO2 PLASTICS, INC., a Delaware corporation

Debtor,

Employer Identification No. 31-1705310

Case No. 09-33702 DM
Chapter 11

**MOTION FOR ORDER APPROVING POSTPETITION FINANCING AND PROVIDING LENDERS WITH SUPERPRIORITY ADMINISTRATIVE CLAIM, A PRIORITY LIEN, AND SUBORDINATING EXISTING SECURED CREDITOR**

Date: **TBD**
Time: **TBD**
Dept: 235 Pine Street, 22nd Floor
San Francisco, CA 94104
Judge: Hon. Dennis Montali

To the Honorable Dennis Montali, United States Bankruptcy Judge, San Francisco, California:

ECO2 PLASTICS, INC. ("Debtor" or "ECO2"), a Delaware corporation, and debtor in possession, hereby moves the Court for the entry of an order authorizing and approving post petition financing in the above-entitled Chapter 11 case (the "Case") in the sum of up to $600,000, and providing the debtor in possession lenders with a superpriority administrative claim and priority lien, and subordinating the existing first secured lien to 75% of the principal


Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 1 of 13

amount of funds advanced. The Secured Creditors have consented or it is anticipated that they will consent to this loan and the subordination. This motion is supported by the Declaration of Rodney S. Rougleot Filed in Support of Debtor's Motion for Final Order Approving Post Petition Financing filed concurrently herewith ("Rougelot Declaration").[1]

## I. BACKGROUND

On November 24, 2009, ECO2 commenced this Chapter 11 case by filing its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). By this motion the Debtor seeks authority to borrow up to six hundred thousand dollars ($600,000) to use to maintain its business during the Chapter 11 process. Although the Debtor is not operating, it has expenses that are necessary to the reorganization process such as the payment of wages for four employees, rent, utilities, and other wind down expenses as set forth in more detail on the Budget attached to the Rougelot Declaration filed concurrently herewith. The Debtor's goal in this Chapter 11 bankruptcy case is to raise exit financing that will allow Debtor to emerge from the Chapter 11 case with sufficient funds to build a new more efficient and productive facility.

### A. Debtor's Prior Sources of Funds

**1.** At the outset of this case all of the cash flow of ECO2 was subject to pre-petition liens which secured loans to various secured parties as set forth in more detail herein below, encumbering substantially all of ECO2's personal property, including its cash collateral. The secured creditors agreed to allow ECO2 to use the proceeds of sales of some equipment and accounts receivable to use during the Chapter 11 process. The Debtor only sold assets that it determined would not be useful or productive in its new facility. However, the Debtor always knew that the sales of the equipment would not be sufficient to allow it to maintain its assets during the Chapter 11 process without debtor in possession financing to complement the use of cash collateral. Debtor estimates that it will run out of funds if financing is not approved before February 19, 2010.

---

[1] A copy of the proposed Order Approving Motion for Postpetition Financing and Providing Lenders with Superpriority Administrative Claim, a Priority Lien, and Subordinating Existing Secured Creditor is attached hereto as **Exhibit A**.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

**B. ECO2 History and Status**

**2.** A detailed discussion of the Debtor's history, description of its business, its assets and liabilities, and the events that led to its need for bankruptcy relief are set forth in the Debtor's Motion for Interim and Final Orders Approving Motion to Use Cash Collateral and the Initial Declaration of Rodney S. Rougelot in Support of Initial Case Motions filed on December 1, 2009 as Docket Number 14 and incorporated herein by reference, and is summarized herein below.

**3.** ECO2 was formerly known as Itec Environmental Group, Inc. and changed its name to ECO2 Plastics, Inc. in 2007. ECO2 is engaged in the development of recycling technology and processing equipment that comprises ECO2 environmental system, which cleans post-consumer plastics within a proprietary, closed-loop system for plastic materials including, high density polyethylene and polyethylene terephthalate, both in the United States and internationally. Since the suspension of pilot plant operations in Riverbank California the business office for ECO2 has been located at 1143 Crane Street, Suite 203, Menlo Park, California 94025.

**4.** ECO2 has developed a unique process referred to as the ECO2TM Environmental System (the "ECO2 Environmental System"). The ECO2 Environmental System cleans post-consumer plastics, without the use of water, at a cost savings versus traditional methods (the "Process"). This Process is both patented and patent-pending and is licensed from Honeywell Federal Manufacturing & Technologies, LLC ("Honeywell") and the Department of Energy on an exclusive basis for the patent life. Since inception, ECO2 has invested in the development of the technology and equipment comprising the ECO2 Environmental System, which includes a Process Patent granted in 2007. This included building several scaled up versions of the Prototype ECO2 Environmental System (the "Prototype"), testing of the Prototypes, building a pilot plant, evaluating the product produced by the Prototype and real-time testing. The second ECO2 pilot plant was constructed at 5300 Claus Road, Riverbank, California, and was producing saleable product until suspension of plant operations in the third

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

quarter of 2009 because it was determined that the size and layout of the existing facility was no longer suitable for the efficient flow of production processes.

**5.** Prior to the commencement of this Bankruptcy case, ECO2 began dismantling and staging equipment for relocation and sale. ECO2 has approximately 4 employees. ECO2 has identified at least one site suitable for the relocated facility as well as new equipment that will be installed alongside certain existing equipment in order to complete an improved production line, however, ECO2 has not made final decisions as to the site location or equipment vendor.

### C. Assets and Proposed DIP Facility.

**6.** The primary assets of the Debtor are its equipment, accounts receivable, and its intellectual property. ECO2 believes that at a minimum, the value of the EOC2 assets, are worth the value of the obligations owing to California Integrated Waste management Board ("CIWMB"), the holder of the first lien. Since the commencement of this case CIWMB merged with the Division of Recycling and is know known as the California Department of Resources Recycling and Recovery ("CalRecycle"). The secured creditors are owed a total of approximately $12,347,223, and the unsecured creditors are owed $2,356,061.57. Debtor has no unencumbered funds. Debtor estimates the value of its remaining equipment on liquidation is approximately $1,200,000, and its intangibles such as goodwill and intellectual property, have some value which items the Debtor cannot estimate at this time, but believe that they exceed $100,000.

## II. BANKRUPTCY RULE 4001 INTRODUCTORY STATEMENT

| | |
|---|---|
| Name of Entity With Interest In Liens: | See Exhibit D to Rougelot Declaration. |
| Purpose of Debtor in Possession Financing:<br><br>Debtor In Possession Lenders: | Proceeds are to be used for necessary operating expenses.<br><br>Buff Investment Limited Partnership ("Buff Investments") and Trident Capital, Inc ("Trident"). (Each to execute separate agreements.) |

| | |
|---|---|
| Terms: | Amount: Each lender is to Loan up to $300,000. Loan IA<br><br>Initial Advance $175,000 per Lender. Subsequent advances in increments of $25,000 on 5 business days notice. Loan IB<br><br>Interest at 8% Note¶ XII<br><br>No Default interest Note¶ XII<br><br>Matures on May 31, 2010 Note XIII<br>Loan and Security Agreement, Loan IC |
| Liens, Cash Payments or Other Adequate Protection Payments: | DIP Lenders have Super Priority Administrative Claim and Priority Lien on all assets up to ¾ of DIP Loan. Loan, III E<br><br>Order Authorizing Loan will be deemed sufficient to Perfect Lien Priority – Loan II<br><br>DIP Lenders request payment of legal fees during Chapter 11<br><br>Subordination Agreement requires postpetition adequate protection payments of interest only to Department of Resources Recycling and Recovery. $4,760.43 per month commencing with December 2009<br><br>Subordination Agreement ¶2 |
| Carve-outs for professional fees:<br><br><br><br>Modification of Automatic Stay<br><br><br><br><br>Events of Default | Carve out for Debtor's Professionals, U.S. Trustee Fees as set forth in the Budget attached as Exhibit A<br><br>Loan and Security Agreement III F<br><br>In the event of default, DIP Lenders can file a motion for relief from stay on 10 days notice<br><br>Loan and Security Agreement IV C<br><br>Loan and Security Agreement Section V<br>A. The failure by Borrower to pay any Obligation to Secured Party within ten (10) days of the date when such payment is due.<br><br>B. The breach or default by Borrower in the compliance with any Budgets under <u>Exhibit A</u> hereof, such default continuing for more than ten (10) days. |

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 5 of 13

| | |
|---|---|
| | C. The breach or default by Borrower in the performance of any covenant or Obligation under this Agreement, the Note(s) or any other Loan Document (other than defaults specified in section V.A. and V.B. and V.D., V.E., V.F., V.G., and V.H.) and such default continues for more than ten (10) days after Secured Party has given notice of such default to Borrower.<br><br>D. Borrower shall file a motion in the Bankruptcy Case: (i) to obtain financing from any person other than Secured Party under 11 U.S.C. § 364 (d); (ii) to obtain financing from any person other than Secured Party under 11 U.S.C. § 364(c) (other than with respect to financing used, in whole or in part, to make full, and final payment of the Obligations; (iii) to grant any lien on the Collateral; (iv) or to use cash collateral of Secured Party without Secured Party's prior written consent or Bankruptcy Court Order.<br><br>E. The entry by the Bankruptcy Court of an order authorizing the appointment of an interim or permanent trustee in the Bankruptcy Case or the appointment of an examiner in the Bankruptcy Case with powers to operate or manage the financial affairs, business, or reorganization of Borrower.<br><br>F. The Bankruptcy Case shall be dismissed or converted from a case under Chapter 11 to a case under Chapter 7 of the Bankruptcy Code.<br><br>G. The entry by the Bankruptcy Court of an order granting relief from or modifying the automatic stay of 11 U.S.C. § 362 to allow any creditor (other than Secured Party) to execute upon or enforce a lien on any Collateral.<br><br>H. The Interim Financing Order or the Final Financing Order shall be modified or revoked without Secured Party's prior written consent.<br><br>I. Borrower seeks, or the Bankruptcy Court approves, the rejection of certain licenses or executory contracts deemed by Secured Party, in its sole discretion, to be material to the operation of the Borrower. |

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 6 of 13

| Certification: | The undersigned Certifying Professional has read the accompanying motion and the foregoing Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the motion are in conformity with the Court's Guidelines for Use of Cash Collateral and Financing Motions and Stipulations except as set forth above. The undersigned understands and has advised the debtor in possession that the court may grant relief under Fed. R. Bank P. 9024 if the court determines that a material element of the motion or stipulation was not adequately disclosed in the Introductory Statement |
|---|---|

**A. Existing Secured Debt**

**7.** The secured creditors are owed approximately $12,347,000, and a list of those secured creditors is attached as Exhibit D to the Rougelot Declaration.

**8.** Secured Creditors fall within five classes in the priority set forth below:

**(a)** CalRecycle loaned Debtor's predecessor the sum of $2,000,000 by way of a secured promissory note dated May 13, 2005, with interest accruing at the rate of 4.25%. The outstanding balance as of the date this case was commenced was the sum of $1,344,123.06. CalRecycle is in first Priority. A copy of the CalRycle Promissory Note and Security Agreement are attached as **Exhibit D** to the Rougelot Declaration. Since the commencement of this case, the CalRycle merged with another department is now known as the California Department of Resources Recycling and Recovery (the "Department" or the "State of California").

**(b)** **Bridge Loan:** Between August 14, 2009 and October 12, 2009, a group of investors loaned the Debtor the sum of $1,275,000, with interest that accrued at the rate of 8%. Said loans are referred to by the Debtor as "**Bridge**" loans and were deemed to have a senior preference position, and advanced as a subsequent advance secured by that security agreement dated June 2, 2009. A sample note from this Class is attached as Exhibit E to the Rougelot Declaration. Paragraph 8.5 provides as follows: "this Note may be converted as set forth herein or *subordinated* without any action of Holder upon approval of holders of at least 60% of the aggregate principal amount of Notes then outstanding."

**(c)** **Preferred Series D- June 2009** In May and June 2009, a group of investors loaned the Debtor the sum of $2,157,865.88, with interest to accrue at the rate of 8%,

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 7 of 13

and secured by that security agreement dated June 2, 2009. A sample Note is attached as Exhibit F to the Rougelot Declaration, The Note provides in paragraph 8.5 that "this Note may be converted as set forth herein or *subordinated* without any action of Holder upon approval of holders of at least 60% of the aggregate principal amount of Notes then outstanding." Attached as Exhibit G to the Rougelot Declaration is a copy of the related Security Agreement Dated June 2, 2009 which provides that Trident is the Collateral Agent and its duties and obligations are set forth in Paragraph 4. Said Security Agreement provides in paragraph 15 that the terms of the Security Agreement may be altered, modified, or amended by at least 60% of the holders of the aggregate principal Notes then outstanding, consistent with the rights under the Note for that class.

**(d) Preferred Series C- December 2008**: In December 2008, a group of investors loaned the Debtor the sum of $3,449,089.71, with interest to accrue at the rate of 8% and secured by that security agreement dated December 17, 2008. Attached as Exhibit H to the Rougelot Declaration is a sample Note. The Note provides in paragraph 8.5 that "this Note may be converted as set forth herein or *subordinated* without any action of Holder upon approval of holders of at least 70% of the aggregate principal amount of Notes then outstanding." Attached as Exhibit I to the Rougelot Declaration is a true and correct copy of the Amended and Restated Security Agreement Dated December 17, 2008. This Security Agreement provides that Trident Capital, Inc is the Collateral Agent and its duties and obligations are set forth in Paragraph 4. Paragraph 15 of the Amended and Restated Security Agreement provides that the terms of the Security Agreement may be altered modified, or amended by the holders of at least 70% of the aggregate principal amount of the promissory notes then outstanding, consistent with the rights under the Note for that class.

**(e) Preferred Series C-September 2008:** On or about September 25, 2008, a group of investors loaned the Debtor the sum of $4,015,144.35, with interest to accrue at the rate of 8% and secured by that security agreement dated September 2, 2008. Attached as Exhibit J to the Rougelot Declaration is a sample Note. The Note provides in paragraph 9.5 that "this Note may be converted or *subordinated* without any action of Holder upon approval by

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 8 of 13

holders of at least 60% of the aggregate principal amount of Notes then outstanding." A true and correct copy of the security agreement Dated September 2, 2008 is attached as Exhibit K to the Rougelot Declaration. The Security Agreement provides that Trident Capital, Inc. is the Collateral Agent and its duties and obligations are set forth in Paragraph 4. The Security Agreement provides in paragraph 15 in the second half of the first sentence as follows: "provided, however, that the terms or provisions of this Security Agreement may be altered, modified or amended, and any obligations of the Company and the rights of the Investor may be waived, in each case upon the written consent of the Company and the Collateral Agent."

**B. Necessity for Use of Post Petition Financing.**

**9.** The Debtor met its pre-petition working capital requirements through borrowing from the Secured Parties. This case was commenced because the Debtor could not obtain any further financing without restructuring its debt. As set forth below, prior to the commencement of this case, the Debtor sought financing from other sources, but could not obtain financing from any unrelated source without restructuring its debt. Debtor seeks post petition financing in the sum of $600,000 that is senior to the existing liens. This is the only financing that Debtor could obtain, and Debtor will not be able to operate if it does not obtain financing on or before February 19, 2010.

**10.** The Debtor is unable, at this time, to procure post-petition financing in the form of: (i) unsecured credit allowable as an administrative expense under Sections 503(b)(1), 364(a), 364(b), and 364(c)(1) of the Bankruptcy Code; or (ii) secured credit pursuant to Sections 364(c)(2) and (c)(3) of the Bankruptcy Code, in each case on terms and conditions more favorable than those offered by Lenders.

**11.** Within four months prior to the date that this bankruptcy case was commenced, ECO2 sought financing to keep it out of bankruptcy. The Debtor met with at least eleven individuals and entities to discuss financing options under any terms.

**12.** Debtor met with Comerica Bank, Wells Fargo Bank and Citizens Bank for traditional loan financing and with Canaccord for investment banking services. In addition the Debtor met with two high net worth individuals, three east coast hedge funds and locally,

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

Wedbush Capital and the Heckman Corporation, also seeking financing under any terms on behalf of the Debtor.

**13.** The institutional banks would not agree to make any loans unless they were supported by a personal guarantee, and ECO2 could not provide such a guarantee. The individuals, the hedge funds and the Heckman Corporation expressed some interest, but would not agree to loan or invest any funds, unless they could control the Debtor, and the existing secured creditors would not consent to relinquishing their positions.

**14.** On the occasions that the Debtor had some communications regarding the possible interest rates that these potential lenders would offer, the interest rates ranged between 10% and 17%, far in excess of the 8% interest rate that the DIP Lenders have agreed to. However, even if the Debtor had agreed to pay the higher interest rates, it was never able to obtain a conditional term sheet from a lender under any terms. Therefore, the Debtor's only alternative was to file a Chapter 11 to restructure its debt, with the hopes that it would be able to attract financing under changed circumstances.

**15.** Having been told by at least eleven entities and individuals that they would not invest any money into this Debtor unless a guarantor could be obtained or the lenders could obtain control over the Debtor, the Debtor went to its existing secured creditors and asked if any of them would be willing to loan the Debtor any money to fund the Chapter 11 process.

**16.** Prior to the commencement of the bankruptcy case, the Proposed DIP Lenders, existing secured creditors, indicated that they would be willing to fund the debtor in possession financing under the terms set forth herein, and based upon their statements, the Debtor commenced this bankruptcy case.

**17.** Since the Debtor commenced this case, no other lender has agreed to loan the Debtor funds for debtor in possession financing under more favorable terms, and eleven lenders in the months leading up to the filing, indicated that they would not loan the Debtor any money except under the circumstances set forth above.

**18.** The terms of the DIP Facility are reasonable, and without this loan, the Debtor would have to consider liquidating, if it does not have financing by February. Therefore,

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 10 of 13

it is in the Estate's best interest to enter into this Loan, and to fund operations so that the Debtor can attempt to confirm a plan of reorganization for the benefit of the creditors of this estate. The unsecured creditors' only hope of receiving a payment in this matter is through a confirmed plan.

**19.** ECO2 needs the post petition financing to keep the assets together, pay rent, utilities, wages, insurance, and professional fees while it is the Chapter 11 process. If ECO2 was liquidated today, it is likely that its assets would sell for an amount far below the amount necessary to pay secured creditors in full, and therefore, unsecured creditors will not have a chance of receiving any recovery if post petition financing is not approved, and the Debtor given a chance to confirm a plan of reorganization.

**C. Terms of Proposed DIP Financing**

**20.** Trident Capital, Inc ("Trident") and Buff Investment Limited Partnership ("Buff Investment"), the proposed lenders (the "Proposed DIP Lenders") have each agreed to provide debtor-in-possession financing in the sum of up to $300,000 as set forth in more detail in that Loan and Security agreement ("DIP Facility" or "DIP Facilities") attached as Exhibit A to the Rougelot Declaration. The proceeds of the DIP Facilities are required to be used pursuant to the Budget attached as Exhibit B to the Rougelot Declaration. The DIP Facilities will be senior to the other Secured Creditors, and specifically, the holder of the first lien, CalRecycle has agreed to subordinate its lien up to 75% of the principal of the DIP Facilities as set forth in the Subordination Agreement attached as Exhibit C to the Rougelot Declaration. It is anticipated that the proceeds of the DIP Facilities will be sufficient to allow the Debtor to operate through the end of May 2010, by which time the Debtor anticipates that a Plan of Reorganization will be confirmed. Debtor seeks authority to use the proceeds of the DIP Facilities pursuant to the Budget, and to be able to exceed any one category, if such funds are available within the Budget, by an amount not to exceed 10% of the total Budget.

**D. Disclosure of Lenders Connections**

**21.** Both of the proposed DIP Lenders are existing secured creditors, or closely related to existing secured creditors. Additionally, two members of the ECO2 Board of Directors are each associated with the DIP Lenders: Alex Millar is a member of the Debtor's Board of

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607

Directors and in connection with other loans, has represented the interests of existing secured creditors Peninsula Packaging, LLC and Charles Buff. Peninsula Packaging has transferred its interests to PPC Holdings, LLC. Charles Buff owns a significant interest in Peninsula Packaging and PPC Holdings. John Morgne is also one of the Members of the Debtor's Board of Directors, and is the managing director of Trident Capital.

## III. LEGAL ARGUMENT

**22.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2).

**23.** Bankruptcy Code Section 364(d) and Rule 4001(c) authorize a debtor in possession to obtain Court approval for secured financing, including priming other secured creditors, if no other source of income can be obtained, and if any such junior creditors are adequately protected or they consent on fifteen days notice. Debtor anticipates that the Secured Creditors will consent to the DIP Facilities and the Subordination Agreement.

**24.** As set forth above, Debtor has not been able to obtain financing from any other source, that is more favorable and Debtor needs financing if it is to maintain its operations this funding.

**25.** The terms of the DIP Facilities are reasonable, and without this loan, the Debtor would have to liquidate. Therefore, it is in the estate's best interest to enter into these loans, and to fund operations so that the Debtor can attempt to confirm a plan of reorganization for the benefit of the creditors of this estate. As set forth in the Rougelot Declaration, the secured creditors have consented to this loan and to the subordination, or it is anticipated that they will consent. CalRycle has consented to subordinate its loan up to 75% of the principal of the amount that the DIP lenders advance under the DIP Facilities conditioned on adequate protection payments of monthly interest only payments in the sum of $4,760.43, pursuant to Bankruptcy Code Section 361, and the Debtor has agreed to make such payments upon approval of this Motion.

/ / / /

WHEREFORE, ECO2 prays for an order:

**1.** Approving the post petition financing in substantially the form described in this Motion;

**2.** Authorizing ECO2 to borrow funds from the DIP Lenders on the terms and conditions set forth in this Motion;

**3.** Granting ECO2 such other and further relief as is just.

Dated: January 28, 2010

WENDEL, ROSEN, BLACK & DEAN LLP

By: *\/s/ Tracy Green*
Tracy Green
Attorneys for Debtor
ECO2 Plastics, Inc.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607



Case: 09-33702 Doc# 123 Filed: 01/28/10 Entered: 01/28/10 15:34:42 Page 13 of 13